UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| RASSOL CHINA, | Civil Action No. 16-9417 (JLL) |
| --- | --- |
| Petitioner, | |
| v. | OPINION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**LINARES**, Chief District Judge

Currently before the Court is the amended motion pursuant to 28 U.S.C. § 2255 of Rassol China ("Petitioner") to vacate, set aside, or correct his sentence. (ECF No. 6). Following an order to answer, the Government filed a response to the amended motion. (ECF No. 12). Petitioner thereafter filed a letter in reply. (*See* ECF No. 13). For the following reasons, this Court will deny Petitioner's amended motion and will deny Petitioner a certificate of appealability.

## I. BACKGROUND

In November 2013, police and federal agents raided a suspected heroin mill in Newark, New Jersey. (PSR at ¶ 9-15). While authorities entered the apartment in which the mill was thought to be located pursuant to a federally issued search warrant, Petitioner and several other individuals fled the apartment by way of a third story window. (*Id.* at ¶ 14-15). Petitioner, who appeared to have injured his legs in the process, then fled via car, nearly hitting an officer attempting to stop him in the process. (*Id.* at ¶ 15). Although Petitioner and some of his co-conspirators initially escaped from the scene of the crime, Petitioner was eventually arrested at a nearby hospital in which he was being treated for injuries from the fall and a car accident that occurred following Petitioner's flight from the heroin mill. (*Id.* at ¶ 20-23). The search of the

apartment from which Petitioner and his cohorts had fled uncovered more than a kilogram of heroin. (*Id.* at ¶ 17-18). Based on these events, Petitioner was indicted on one count of conspiracy to distribute and possess with the intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and one count of distribution and possession with intent to distribute more than a kilogram of heroin in violation of 18 U.S.C. § 2 and 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Docket No. 15-203 at ECF No. 19).

On May 26, 2015, the Government offered Petitioner a plea agreement which he ultimately chose to sign. (Document 1 attached to ECF No. 12). Pursuant to the agreement, Petitioner agreed to plead guilty to both counts of the indictment in exchange for receiving no further charges related to the heroin mill and certain sentencing stipulations. (*Id.* at 1). In the agreement, Petitioner was informed that his plea of guilty exposed him to "a statutory mandatory minimum term of imprisonment of ten years and a maximum prison sentence of life," and that his sentence would be "imposed . . . [in] the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act . . . and the sentencing judge's consideration of the United States Sentencing Guidelines . . . [which] are advisory, not mandatory." (*Id.* at 2). In the agreement, the parties also stipulated to various sentencing factors, including a three level reduction for acceptance of responsibility, a base offense level of 30, and that Petitioner's offense involved between one and three kilograms of heroin. (*Id.* at 7). These stipulations also noted that Petitioner "may be a career offender" but the agreement "reserve[d] the right [of both parties] to argue their respective positions [on the career offender enhancement] at sentencing." (*Id.*). Ultimately, these stipulations resulted in a total offense level of 34 "if [Petitioner] is determined by the Court to be a career offender" under the Guidelines, or a level of 27 if he were not found to be a career offender. (*Id.* at 8). Although Petitioner was permitted to address the career offender issue and argue for a

low sentence within the guidelines range, the plea agreement specifically denied either party the ability "to seek or argue for any upward or downward departure, adjustment or variance" not provided for in the stipulations. (*Id.*). Both Petitioner and his attorney signed the agreement on September 10, 2015. (*Id.* at 6).

Petitioner appeared before this Court to plead guilty on September 10, 2015. (Document 2 attached to ECF No. 12). In accordance with his decision to plead guilty, Petitioner also submitted to the Court an application to plead guilty, in which he certified that he had been informed that he faced a maximum sentence of life and a minimum sentence of 10 years, and that he would be subject to a sentence equivalent to a level 27 under the guidelines if found not to be a career offender and equivalent to a level 34 if found to be a career offender. (Docket No. 15-203 at ECF No. 43). After establishing that Petitioner was aware of his situation and could adequately understand his plea proceedings, this Court conducted the following colloquy with Petitioner regarding his plea agreement:

> THE COURT: . . . Did you have an opportunity to read the plea agreement letter with your lawyer and read it yourself?
>
> [Petitioner]: Yes.
>
> THE COURT: Did you have an opportunity to ask your lawyer any questions that you may have had with regard to the plea agreement letter?
>
> [Petitioner]: Yes.
>
> THE COURT: Did he answer those questions to your satisfaction?
>
> [Petitioner]: Yes.
>
> THE COURT: Having read the plea agreement letter and having talked to your lawyer about it, do you feel that it sets forth accurately what you expect to get in exchange for pleading guilty?
>
> [Petitioner]: Yes.

THE COURT: Are there any questions that you need to ask me or your lawyer about the plea agreement letter?

[Petitioner]: No.

THE COURT: Did anyone force you or threaten you into having to sign the plea agreement letter?

[Petitioner]: No.

THE COURT: After you read the agreement letter, did you then sign the agreement letter?

[Petitioner]: Yes.

[The Court then ascertained that the signatures on the agreement were those of Petitioner and counsel.]

THE COURT: Now, I want to explain to you that if you do plead guilty, there are certain consequences here that you should be aware of. Number one: The plea agreement letter is only a contract between you and the Government, but the Government has to abide by the plea agreement letter and so do you. I don't have to abide by the plea agreement letter. Now, normally I go along with the plea agreement letter absent some special circumstance, but I am not bound by the plea agreement letter, and you would not be allowed to take back your guilty plea if you don't agree with my sentence or if my sentence ends up being more serious than you may anticipate. Do you understand that?

[Petitioner]: Yes.

[The Court then explained that Petitioner was waiving his right to a trial, including his right to cross examination and the presumption of innocence.]

[Now], at the time of sentence, I am going to look at the statutes, in other words, the law that applies to the kind of case that you are being charged with, and I have to tell you that under . . . that law, you could be sentenced to a mandatory minimum of ten years, and you could be fined up to $10 million or twice the amount of any gross profits or losses that anyone may have received as a result of your offense.

[The Court then explained the applicable fines and restitution, and that Petitioner was subject to five years of supervised release after his prison term ends.]

4

>                   Do you understand that?
>
> [Petitioner]: Yes.
>
> THE COURT: Now, there is also the sentencing guidelines, which I am going to look at. Now, the sentencing guidelines, did your lawyer talk to you about the Federal Sentencing Guidelines?
>
> [Petitioner]: Yes.
>
> THE COURT: Now, those guidelines set forth certain minimum and certain maximum sentences and then circumstances under which I could give you less than the minimum or more than the maximum, and they are not mandatory on this Court, and I don't have to follow the guidelines, but I generally do, and I generally do because they set forth valuable information, and they ask that I take into account a lot of different things, like whether or not you have a prior . . . criminal record and what it is, what was the role that you played in the commission of this crime, what was the amount of the drugs or the money involved, what was the nature of the victims, were there any weapons involved, did anyone get hurt, did you cooperate with the Government, did you try to obstruct justice, did you plead guilty, like you are trying to plead guilty today. So there are a lot of factors that go into it, and I don't know if any of them or all of them apply to you, so I can't tell you today exactly where you are going to fall within the guidelines. Do you understand that?
>
> [Petitioner]: Yes.
>
> THE COURT: Now, your lawyer may have told you or the Government may have told you where they think you are going to fall within the guidelines, and that is okay, but at the end of the day it is my assessment of where you fall within the guidelines that controls, and you would not be allowed to take back your guilty plea, if I decide you fall at a different guideline level than they may have told you. Do you understand that?
>
> [Petitioner]: Yes.

(Document 2 attached to ECF No. 12 at 9-14).

The Court thereafter summarized the elements of the charged crimes, and Petitioner provided a factual basis in support of his guilty plea. In so doing, Petitioner admitted that he was

in the third floor apartment containing the heroin mill on November 12, 2013, that he was helping to package the heroin at the time of the raid, that he knew it was heroin, and that he had conspired with the other individuals to package the heroin. (*Id.* at 17). Based on this factual basis, and this Court's conclusion that Petitioner understood the consequences of his decision to plead guilty, this Court then accepted Petitioner's guilty plea. (*Id.*)

Prior to Petitioner's sentencing, Probation prepared a pre-sentence report which recommended that the Court find that Petitioner was a career offender and that he was subject to a total offense level of 34. (PSR at ¶ 42-51). According to Petitioner's criminal history as presented in the PSR, Petitioner had at least four prior predicate controlled substance offenses occurring after he turned eighteen, Petitioner's current offense was a controlled substance offense committed after age eighteen, and Petitioner was therefore subject to a career offender enhancement. (*Id.* at ¶ 48, 55-61).

Petitioner came before the Court for sentencing on December 16, 2015. (Document 5 attached to ECF No. 12). Prior to the hearing, Petitioner had initially filed a sentencing memo in which he had attempted to oppose the imposition of the career criminal enhancement, but counsel for Petitioner submitted a letter withdrawing that argument just prior to the hearing. (*Id.* at 4). Counsel explained the withdrawal of that argument as follows:

> I just wanted it on the record that after submitting [Petitioner's initial sentencing memo], I spoke with the Government on the matter, understood their position, and I went to go speak with [Petitioner] in person. I explained each [issue] to [Petitioner], and he agreed to withdraw the argument for purposes of the sentencing. So far as that is concerned, [Petitioner's opposition to the career offender enhancement] is withdrawn as I indicated.

(*Id.* at 6). Although counsel withdrew his opposition to the career offender enhancement, counsel provided the Court with a forceful argument in support of a sentence on the bottom of the

6

applicable guidelines range, noting that Petitioner's tragic background, abuse suffered as a child, family issues, and environment warranted special consideration by the Court as mitigating factors. (*Id.* at 6-8). Counsel also noted that, as a man in his thirties, even with a low-guidelines sentence, Petitioner was likely not to be released until "he is well into his fifties" and that Petitioner was prepared to move forward and put his life together. (*Id.* at 8). Counsel also argued that the Court should consider Petitioner's cooperation and acceptance of responsibility, both as part of its guidelines evaluation and as a mitigating factor. (*Id.*). Petitioner in turn encapsulated this acceptance of responsibility by telling the Court that he "apologize[d] for what [he] did" and by openly admitting at sentencing that he was "guilty for committing the crime." (*Id.*).

Ultimately, this Court found the guidelines range calculated in the PSR to be accurate, including the career offender enhancement and a two-level enhancement for obstruction of justice, but noted that this latter enhancement did not greatly affect Petitioner's ultimate sentence as he was classified a career offender and was thus required to be sentenced under the applicable career offender level. (*Id.* at 11). Although the Court found that this advisory guidelines range of 262 to 327 months to be appropriate, this Court ultimately imposed a sentence of 262 months — the very bottom of the applicable guidelines range — in light of the mitigating factors and Petitioner's difficult personal history raised by counsel. (*Id.* at 13).

Petitioner thereafter appealed. (Docket No. 15-203 at ECF No. 61). On appeal, counsel filed an *Anders* brief, arguing that there were no meritorious grounds for appeal. *See United States v. China*, 662 F. App'x 116, 117-18 (3d Cir. 2016). On appeal, Petitioner's chief contentions were that the Court erred in applying the two level increase for obstruction of justice because it had not been contemplated in the plea agreement and that his ultimate sentence was unreasonable. *Id.* at 118. The Third Circuit rejected those arguments, explaining as follows:

> Counsel noted that the District Court arguably erred in applying an enhancement for obstruction of justice under U.S.S.G. § 3C1.2 because the enhancement was not contemplated as part of the plea agreement.[1] Nonetheless, counsel acknowledged that application of this enhancement does not entitle [Petitioner] to relief. The § 3C1.2 obstruction of justice enhancement affected only the total offense level of 32, which was rendered inoperative once it was determined that the offense level from the career offender table was "greater than the offense level otherwise applicable." U.S.S.G. § 4B1.1(b). Thus, the District Court did not err in calculating the Guideline range under the career offender guideline. Nor do we discern any procedural error as there were no motions by [Petitioner] for the District Court to rule upon and the Court fully considered the argument for a downward variance. The within-Guideline sentence, given the Court's explanation for the sentence imposed, was not substantively unreasonable.

*Id.* at 118. The Third Circuit thus affirmed, finding that the record of Petitioner's criminal plea and sentencing "fail[ed] to reveal any nonfrivolous issues for appeal." *Id.*

## II. DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the movant claims a jurisdictional defect or a constitutional violation,

---

[1] In a footnote, the Third Circuit explained that the Court did not violate the plea agreement in finding an enhancement not contemplated by the plea agreement, because the plea agreement clearly explained that it was the Court, and not the agreement, which would ultimately determine the applicable guidelines range and impose the final sentence. *Id.* at 118 n. 4.

8

to be entitled to relief the movant must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## B. Petitioner is not entitled to an evidentiary hearing

28 U.S.C. § 2255(b) requires an evidentiary hearing for all motions brought pursuant to the statute "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also Booth*, 432 F.3d at 546. For the reasons set forth below, all of Petitioner's claims are without merit based on the record before the Court, and Petitioner is therefore not entitled to an evidentiary hearing.

## C. Petitioner's Ineffective Assistance of Counsel Claims

In the amended motion to vacate, set aside, or correct the sentence, Petitioner raises several claims of ineffective assistance of counsel. The standard applicable to ineffective assistance claims is well established:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance

9

was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81.

Petitioner first argues that his counsel was ineffective at sentencing because he withdrew his objection to the career offender enhancement and did not adequately explain to Petitioner the sentence he faced were he to be classified as a career offender. Turning first to Petitioner's argument that counsel should not have withdrawn his career offender objection, the Court finds that Petitioner's argument is without merit as counsel cannot be ineffective for failing to raise a meritless objection. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (holding that "counsel cannot be deemed ineffective for failing to raise a meritless claim"); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011). Under the sentencing guidelines, a criminal defendant qualifies as a career offender and is subject to the career offender enhancement if he "was at least eighteen years old at the time [he] committed the instant offense of conviction," "the instant offense . . . is a felony that is either a crime of violence or a controlled substance offense," and he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. A crime qualifies as a controlled substance offense where it is an offense under federal or state law, is punishable by a term exceeding one year, and "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *United States v. Shannon*, 715 F. App'x 187, 195 (3d Cir. 2017) (quoting U.S.S.G. § 4B1.2(b)). Clearly, the instant offense is a controlled substance offense, and Petitioner was over eighteen at the time it occurred. As noted in the PSR, Petitioner had at least four prior predicate controlled substance offenses in his criminal history, including multiple convictions for possession with intent to distribute heroin and cocaine and possession with intent to distribute heroin and cocaine within one thousand feet of a school. (PSR at ¶ 48, 55-61). Petitioner thus clearly meets all the requirements of the career offender enhancement, the enhancement was

applicable to Petitioner, and any objection to its application would have been without merit. Counsel was thus not ineffective for withdrawing his objection to the enhancement, a course of action to which Petitioner apparently agreed according to counsel's statements to the Court during sentencing.

Petitioner also argues that counsel did not adequately advise him as to the sentence he faced as a career offender. Erroneous sentencing predictions or the like provided by counsel in regard to a plea agreement, however, will not support an ineffective assistance of counsel claim where the petitioner's plea hearing, plea agreement, and application to plead guilty provided the petitioner with the maximum sentence he faced and information regarding the discretion of the sentencing court. *See Shedrick*, 493 F.3d at 299-300.[2] As the Third Circuit noted on direct appeal, Petitioner's plea agreement – which Petitioner stated that he read and understood – and the application for permission to plead guilty he signed on the day of his guilty plea both informed Petitioner that he faced a maximum sentence of life. *See China*, 662 F. App'x at 117. The agreement, and this Court during Petitioner's plea colloquy, also informed Petitioner of this Court's sentencing discretion,

---

[2] The Court notes that Petitioner raises this claim not in regard to a claim that counsel was ineffective in advising Petitioner to accept the plea agreement, but rather solely as ineffective assistance of counsel at sentencing. While *Shedrick* concerned a plea related claim, it follows that the chief point at which a criminal defendant needs to be advised of his potential sentencing exposure is *before* he pleads guilty and marches inexorably toward his ultimate sentence. It likewise follows that if a petitioner knew his exposure before pleading guilty, he certainly knew of it at the time of his sentence. In any event, Petitioner has not shown that his lack of knowledge of his exposure under the career criminal guideline had any actual effect on the outcome of his sentence. Whether Petitioner knew the exact sentencing exposure resulting from his career criminal status does not change the fact that he qualifies and was subject to the enhancement. Petitioner has thus also failed to show that he was in any way prejudiced by counsel's failure to "adequately" advise him as to his sentencing exposure once again after he had already pled guilty. The Court likewise notes that, during sentencing, counsel stated to the Court that he had discussed the issue with Petitioner, that Petitioner agreed not to oppose the career offender enhancement, and that counsel fully expected a sentence of over twenty years, thus it appears that counsel was aware of Petitioner's likely sentence and informed Petitioner of it in any event.

the advisory nature of the guidelines, and that Petitioner faced a mandatory minimum of ten years. Petitioner was thus aware at the time he pled guilty that he faced a sentence of up to life in prison, and that his sentence would be left to the sole discretion of the Court upon a review of the recommended guidelines range and the relevant sentencing factors. Indeed, the plea agreement also informed Petitioner that he was potentially subject to a sentencing enhancement as a career offender, and thus provided Petitioner with adequate knowledge of his sentencing exposure by the time he pled guilty. Petitioner can thus not now argue that he was unaware of the sentencing exposure he faced under the agreement.

Petitioner next argues that sentencing counsel was ineffective in failing to argue for a downward departure or variance from the applicable guidelines range. What Petitioner ignores in so arguing, however, is the plea agreement that he signed. In that agreement, the parties specifically "agree[d] not to seek or argue for any upward or downward departure, adjustment or variance" not expressly set forth in the plea agreement. (Document 1 attached to ECF No. 12 at 8). Petitioner, by knowingly and voluntarily pleading guilty pursuant to that agreement, expressly waived the right to argue for a downward departure from the Guidelines range, or for any other sentencing reduction or variance other than those expressly contained in his plea agreement. Any argument for a downward variance or departure based upon the sentencing factors or the guidelines would thus have amounted to a material breach of the plea agreement and would have had the potential consequence of robbing Petitioner of the benefits of his bargain. As counsel cannot be constitutionally ineffective in refusing to breach the plea agreement his client willingly and knowingly agreed to, Petitioner's contention that his counsel was ineffective for failing to breach the agreement and argue for a sentencing departure is thus without merit. *See, e.g., Garnes v. United States*, No. 10-551, 2010 WL 3323806, at *3 (D.N.J. Aug. 20, 2010); *see also United States*

*v. Erwin*, 765 F.3d 219, 232 (3d Cir. 2014) (criminal defendant's breach of plea agreement can warrant resentencing, where Government was relieved of its obligations under the agreement and was permitted to argue for a harsher sentence than that contemplated by the original agreement). Even were this not the case, Petitioner has utterly failed in any way to show that he would have received any less of a sentence had counsel made such a barred argument, and he has thus failed to show prejudice in any event, and his argument fails for that reason as well.

Built into Petitioner's argument regarding a downward departure is his assertion that counsel did not adequately argue a case for leniency pursuant to the sentencing factors. Although counsel did not request a downward departure or variance from the guideline range – as such an argument would breach the plea agreement – he did ably and effectively argue in favor of leniency by highlighting his client's cooperation in his own prosecution and his tragic personal and family history. Counsel's arguments on Petitioner's behalf are part of the reason that this Court gave Petitioner a sentence at the bottom of the guidelines range even after the Court found a sentencing range between 262 months and 327 months to be appropriate given Petitioner's considerable criminal record. Counsel thus argued more than adequately on Petitioner's behalf, and Petitioner received the meaningful consideration of his history in light of the sentencing factors he now claims to have been denied.

More to the point, although Petitioner asserts that his ultimate sentence under the career offender enhancement was unfair and that he should have received a lesser sentence had counsel argued for a barred sentencing departure or variance, he reaches this conclusion only by grossly downplaying his criminal history. Although it may be true that Petitioner's current sentence is double or triple that of his prior state court sentences, this fact does not weigh in Petitioner's favor. Instead, it indicates that even several multi-year sentences were incapable of instilling in Petitioner

a respect for the law sufficient to deter him from future criminal conduct, a factor that weighs in favor of a heavier sentence, and not a lighter one. Likewise, that Petitioner's sentence is much longer than a non-career offender would have received for similar conduct only appears relevant because Petitioner downplays, if not ignores, that he has a considerable criminal record including at least four prior controlled substance offenses, thereby warranting the sentencing range suggested by the career offender guideline. Ultimately, to the extent Petitioner argues that he would have received a sentencing variance had counsel argued for one despite the bar on doing so in the plea agreement, the argument cannot succeed because nothing Petitioner presents in any way shows that, had counsel so argued, he would have received a lesser sentence than he did. Indeed, this Court finds that, had counsel made the arguments Petitioner now presents, there is no likelihood that he would have received a lesser sentence than the bottom of the guidelines sentence he already received. As this Court explained at sentencing, Petitioner's history and conduct, which was more than sufficient to subject him to the career offender enhancement, warranted a sentence of 262 months. Because Petitioner has not shown that the outcome of his sentencing would have been different had counsel made further arguments under the sentencing factors, his claim must fail. *Cross*, 308 F.3d at 315 (failure to show prejudice fatal to ineffective assistance claim).

In his next claim, Petitioner asserts that counsel failed to adequately investigate the "law and the facts" of his case prior to sentencing. Counsel for a criminal defendant "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "[T]he failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation,"

and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n.23 (3d Cir. 2014) (internal quotes omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (complete absence of investigation usually amounts to ineffective assistance, because counsel cannot make an informed, strategic decision not to investigate without a basic understanding of facts of the case); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980). Even where a petitioner can show such deficiency, however, he must still establish prejudice, which requires he "make 'a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.'" *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

Petitioner provides little if any information in support of his claim, instead merely asserting that, had counsel investigated further, he would have found that Petitioner was subject to a career offender enhancement, that this enhancement would be unfair because Petitioner's lengthy criminal history puts him on par at sentencing with drug dealing "kingpins," and that this would have led counsel to argue for the same sentencing variance which this Court has already explained

16

counsel was barred from raising by the plea agreement. Even putting aside the fact that counsel was explicitly barred from seeking such a variance by the plea agreement, the only information Petitioner asserts counsel would have discovered with more information is that he is subject to a career offender enhancement, a point counsel conceded when he withdrew any argument in opposition. Counsel was thus aware of the fact that Petitioner was subject to the enhancement, and thus wisely withdrew his argument to the contrary and instead used his opportunity at sentencing to argue for leniency in light of the sentencing factors. Petitioner has thus not shown that counsel failed to investigate, has not shown that counsel would have discovered any information of which he was not already aware, and has not in any way shown that further investigation would have in any way led to a lesser sentence. As explained above, Petitioner is only "on par with kingpins" (Document 1 attached to ECF No. 6) by being subject to the career offender enhancement because he amassed a slew of criminal convictions for controlled substances offenses, failed to be deterred by the sentences he received from those offenses, and chose to involve himself in further drug-related criminal activity to which he pled guilty in this matter. Petitioner's choices, not counsel's alleged ineffectiveness, resulted in Petitioner being subject to the enhancement, and Petitioner has in no way shown that this Court would have imposed a lesser sentence had counsel made the arguments Petitioner wishes he had.

In his final claim, Petitioner attempts to amalgamate all of his prior claims into a catch-all argument of cumulative ineffective assistance of counsel. Although "errors that individually do not warrant habeas relief may do so when combined," such cumulative error claims will only succeed where the petitioner can show that he was actually prejudiced by the alleged errors. *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). Where the cumulative claims the petitioner seeks to raise are ineffective assistance of

counsel claims, this essentially requires the petitioner to show that he showed *Strickland* prejudice from counsel's actions when considered together. *Albrecht*, 485 F.3d at 139; *see also Judge*, 119 F. Supp. 3d at 292-93.

Petitioner's claims, however, fair no better in the aggregate than they do individually. As explained above, Petitioner has not shown that any of the allegations of error he has presented – the failure to argue for a downward departure specifically barred by his plea agreement, the withdrawal of a meritless objection to the career offender enhancement, the alleged failure to "adequately" inform Petitioner of his sentencing exposure despite clear information on exposure in Petitioner's plea agreement and application for permission to plead guilty, and counsel's alleged failure to investigate Petitioner's case – actually prejudiced him. Petitioner has failed to show in any way, shape, or form that his sentence would have been different had counsel taken the steps Petitioner now wishes had been taken. Indeed, in so much as most of Petitioner's assertions address either a meritless argument or potential actions by counsel that would have violated the plea agreement, it is quite likely that Petitioner would have received a more severe sentence had the Government not been bound by the plea agreement. At sentencing, counsel advocated Petitioner's case and successfully asked for leniency – leading this Court to sentence Petitioner to the very bottom of the guidelines range that this Court found to be warranted in this matter. Petitioner has presented no argument that would have inclined this Court to sentence him to any less of a term than that which he received. Petitioner was subject to the career offender enhancement, the disrespect for the law and need for deterrence indicated by Petitioner's long criminal history demonstrated the need for a sentence in the recommended career offender range, and this Court therefore sentenced Petitioner to a sentence within that range. None of the arguments Petitioner has presented would have changed his sentence, and Petitioner has therefore

utterly failed to show that he suffered *Strickland* prejudice from counsel's actions at sentencing. Petitioner's amended motion to vacate, set aside, or correct his sentence must therefore be denied, as all of his claims are without merit.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, all of Petitioner's claims are without merit, and Petitioner has therefore failed to make a substantial showing of the denial of a constitutional right. As jurists of reason would not disagree with this Court's denial of Petitioner's amended motion, Petitioner is denied a certificate of appealability.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's amended motion to vacate, set aside, or correct his sentence (ECF No. 6) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

JOSE L. LINARES,
Chief Judge, United States District Court

Date: April 30th, 2018